SCOTT v. ALEXANDER.

1. Statements of fact appearing only in the argument of counsel, and not admitted by the opposing party, cannot be here considered.
2. *Quere:* Are costs in chancery cases now within the discretion of the Circuit Judge?  *Code,* § 323.
3. An appeal alleging error of law may be taken upon a question of costs in a chancery case, where the Circuit Judge did not hear the cause upon its merits, but decided only the question of costs.
4. Where a board of aldermen have increased, and are continuing to increase, the debt of their city beyond the limit fixed by statute, and citizens institute an action to enjoin any further increase, the aldermen may be required personally to pay the costs of the action.
5. An action having been commenced against a board of aldermen, in which there was involved but one issue, which is finally determined in the plaintiff's favor, and afterwards this board was succeeded in office by a new board, when, by amendment, other parties were brought in and other issues were raised and litigated, the original defendants are properly chargeable with the costs incurred in the determination of the first issue only.

Before WITHERSPOON, J., Richland, July, 1883.

The opinion fully states the case.

*Messrs. L. F. Youmans* and *W. A. Clark,* for appellants.

*Mr. F. W. Fickling,* contra.

June 2, 1885.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   On March 13, 1872 (15 *Stat.,* 220), an act of the legislature was passed authorizing the mayor and aldermen of the city of Columbia to borrow money by issuing bonds of said city, which, together with the then outstanding indebtedness of the city, should not exceed the sum of $600,000,

the declared object of the act being to limit the whole amount of the indebtedness of the said city to the amount above mentioned ; and for this purpose it was provided that before any bonds were issued under said act, the city council should recall and cancel certain bonds to the amount of $250,000, issued on August 21, 1871, for the erection of a city hall and market. By the fourth section of said act it was provided that the mayor and aldermen should, at any time upon the written demand of the holder or holders of $50,000 of said bonds, or of corporators to the number of twenty, publish a detailed statement of the city indebtedness and the character of the same. The seventh section of the act prohibited the mayor and aldermen from increasing the debt of said city beyond the said sum of $600,000, and provided that "upon any attempt being made so to do, any bondholder or corporate taxpayer shall have his action to enjoin the said mayor and aldermen from so doing."

The plaintiff, as a corporator and taxpayer of said city, having made the demand upon the mayor and aldermen of the city as provided for in the fourth section of the act, and having failed to obtain the desired information, on August 14, 1875, instituted this action against John Alexander as mayor, and Henry W. Purvis, Augustus Cooper, C. J. Carroll, B. F. Griffin, Sancho P. Davis, John A. Pugh, S. D. Swygert, Adam Thomas, William A. Carr, L. L. Brown, William Simons, and D. Wells, aldermen of said city of Columbia. In the complaint it was alleged that the said mayor and aldermen had contracted debts of the city largely in excess of the amount limited by the above cited act, and were then, from time to time, increasing said debt beyond said limit, and prayed that all debts in excess of said limit be declared invalid, and that said mayor and aldermen be enjoined from further increasing said debt. The mayor and aldermen answered, denying that they had increased the debt of the city beyond the limit fixed by the act, alleging that the debt of the city at the time of the passage of said act far exceeded the limit fixed therein.

On September 7, 1875, the said defendants "were enjoined, by order of the court, from contracting or increasing said city debt, except to a limited amount, ascertained to be necessary for

the current expenses of the city government." On January 6, 1876, the Columbia Waterpower Company and others, as representing various classes of creditors of the city, were made parties, and the complaint was further amended by inserting allegations impeaching certain demands against the city, and by calling in creditors to establish their demands. The only answers to the amended complaint were those put in by John Agnew, mayor, and his board of aldermen, who seem to have succeeded John Alexander and his board on the first Tuesday in April, 1876, and the Carolina National Bank representing one of the classes of creditors.

On January 6, 1876, James P. Lowe was appointed referee "to inquire and report as to the matters embraced in the complaint." He made four reports, dated January 11, July 25, and November 9, 1876, and February 5, 1877, in which is embraced a complete exhibit of the financial affairs of the city, together with a large amount of testimony impeaching or sustaining various disputed claims.

On March 1, 1877, the case, with the testimony taken by referee Lowe, was referred to Louis LeConte, Esq., "to hear and determine all the issues," and on April 28, 1877, he made his report, recommending that the complaint be dismissed as to all the defendants without costs, except as to John Alexander and the persons composing his board of aldermen, and the mayor and aldermen of the city of Columbia, and recommending that John Alexander and the other defendants named in the original complaint be required to pay the costs and disbursements of the plaintiff herein. To this report the plaintiff and John Agnew, as mayor, with his board of aldermen, excepted so far as it related to the validity of certain claims against the city, and B. F. Griffin, S. D. Swygert, Augustus Cooper, C. J. Carroll, Adam Thomas, and William Thomas, six of the defendants named as aldermen in the original complaint, also excepted, amongst other things, because they were required to pay the costs of the plaintiff.

On August 31, 1877, the cause was recommitted to Mr. Barnwell, as master, to take further testimony, and, by consent, the city of Columbia, as a corporation, was made a party. The

master made two reports, furnishing a complete history of the cause and the issues involved. From these reports it appears that John Alexander was mayor, and the persons named as the other defendants in the original complaint were aldermen of the city from the first Tuesday in April, 1874, to the first Tuesday in April, 1876, when, as we infer, John Agnew and his board of aldermen succeeded to those offices. It also appears that John Alexander was mayor, and the following persons named as defendants in the original complaint, viz. : B. F. Griffin, Augustus Cooper, C. J. Carroll, and William A. Carr, were aldermen from the first Tuesday in April, 1872, to the first Tuesday in April, 1874, and that two of the defendants in the original complaint are dead, viz., Adam Thomas and William Simons. Whether there were any exceptions to these reports of the master, or whether any recommendation was made therein as to costs, as was done in the report of referee LeConte, which was recommitted to the master, does not appear; but when the case was called for hearing in the Circuit Court, counsel for plaintiff announced that since the passage of the act of February 19, 1880 (17 *Stat.*, 233), authorizing the city of Columbia to fund its debt, and repealing all acts and parts of acts inconsistent with its provisions, the case could not proceed to final judgment, and all that was asked for was an order providing for the payment of plaintiff's costs and disbursements.

The Circuit Judge proceeded to consider that question alone, and in his decree, after setting forth the facts substantially as above stated, used this language : "I am satisfied from the evidence as to the correctness of the conclusions of referee LeConte and master Barnwell, that the aggregate debt of the city of Columbia, on October 31, 1873, was $600,000, the amount limited under the act of March 13, 1872 ; that on April 30, 1874, said debt was increased to $650,000 ; on December 31, 1874, to $679,000 ; and on December 31, 1875, to $744,000. I am also satisfied from the evidence that the defendants in the original complaint, John Alexander, as mayor, and Henry W. Purvis and others, aldermen of the city of Columbia, did increase the debt of said city, and, at the commencement of this action, were con-

tinuing to increase said debt, largely in excess of the amount limited and prohibited under the act of March 13, 1872."

He therefore adjudged that inasmuch as the action could not proceed to final judgment, since the passage of the act of February 19, 1880, the complaint be dismissed without costs to the defendants; that all pending injunctions be dissolved, and that the defendants, John Alexander and others, named as defendants in the original complaint, having rendered the action necessary by their violation of the·provisions of the act of 1872, be required to pay the plaintiff his costs and disbursements incurred prior to February 19, 1880, and that for this purpose plaintiff have judgment, with leave to issue execution, against John Alexander, Henry W. Purvis, Augustus Cooper, C. J. Carroll, B. F. Griffin, Sancho P. Davis, John A. Pugh, S. D. Swygert, William A. Carr, L. L. Brown, and D. Wells, with leave to said plaintiff to make the legal representatives of Adam Thomas and William Simons, deceased, parties defendants by proper proceedings.

From this judgment the defendants, B. F. Griffin, S. D. Swygert, W. A. Carr, and Augustus Cooper, appealed upon the ground of error "in ordering and adjudging that the plaintiff have leave to enter execution against John Alexander, mayor, Henry W. Purvis and others, aldermen, including these appellants, personally, for his costs and disbursements in this action accrued up to February 19, 1880, and the antecedent portions of the decree on which this was based." Pending the appeal, the plaintiff died, and the action has, by the order of this court, been continued in the name of F. W. Fickling as his administrator.

This appeal cannot be regarded as presenting any question except whether there was error in requiring the appellants, personally, to pay plaintiff's costs, for that portion of the exception which imputes error in "the antecedent portions of the decree" is too general to require any notice at our hands. No specific error is pointed out, except as to the costs. Indeed, as the only papers furnished us are the decree of the judge, with a very brief statement appended (in which none of the facts stated in the decree are contravened), and the argument, or points and authorities, of appellants' counsel, we are necessarily confined to the facts stated in the decree as supplemented by the appended state-

ment.   It is true that the fundamental fact, as to whether the debt of the city was increased by the board of aldermen to which appellants belonged, is not only questioned but absolutely denied in appellants' points and authorities, but, as we have often had occasion to say, we can only consider such facts as appear in the "Case" or are admitted at the hearing, and cannot consider any additional or contradictory statement made in the argument of counsel.

We are, therefore, bound, in considering the question presented by this appeal, to assume as a fact that, at the time this action was originally commenced, the defendants, Alexander and his board of aldermen, amongst whom were these appellants, had increased, and were continuing to increase, the debt of the city beyond the amount limited, fixed by the act of March 13, 1872, and, therefore, that there was good ground for plaintiff's action, and that *prima facie*, at least, he would be entitled to costs as against them.   But granting this to be so, two other questions are presented : first, whether these defendants, being sued in their official capacity, can be made personally liable for costs ; and, second, up to what stage in the case would they be liable, inasmuch as it appears that very soon after the action was commenced they went out of office, and they were succeeded by John Agnew and his board of aldermen, when the case by amendment had assumed a totally different aspect.

But before proceeding to the consideration of these questions, it will be necessary to notice a preliminary objection raised by the counsel for the respondent, which it is urged effectually cuts off this appeal.   It is contended by him that this is an equity cause, and that in such cases costs are in the discretion of the court, and any order in reference thereto is not appealable.   This, as a general proposition, is doubtless true.   Under the former equity practice, that court would not entertain an appeal upon a question of costs alone, but the cases in which this was decided were cases in which the chancellor who made the decree as to costs had heard the case on its merits, and his discretion in awarding costs was supposed to have been exercised upon full view of the conduct of the parties.   Even in that court, when the appeal was upon other points, as well as upon the question of costs, and

the decree below was reversed upon some point affecting the
merits, the order for costs would likewise be reversed (*Singleton*
v. *Allen*, 2 *Strobh. Eq.*, 166); and in *Hext* v. *Walker* (5 *Rich.
Eq.*, 5), the Court of Appeals went so far as to modify a decree
in respect to the costs, although there was no appeal upon that
point, upon the ground that the Circuit Chancellor had inadver-
tently awarded costs against a party who clearly was not liable
for them. So that it appears that even in the old Court of Equity
the question of costs was not entirely beyond the reach of the
Court of Appeals.

Under the code, as it was originally adopted, costs in equity
causes were expressly declared to be in the discretion of the court.
See section 332, of the Code of 1870, as construed in *Mars* v.
*Conner*, 9 *S. C.*, 79. This section was, however, repealed by
the act of February 20, 1880 (17 *Stat.*, 303), and now, by section
323 of the Code of 1882, costs follow the result of the action in
cases of chancery "unless otherwise ordered by the court." Since
these changes of the law, it may, perhaps, be doubted whether
costs in cases of chancery are in the discretion of the court; but
be that as it may, and assuming that where costs are awarded to
one or the other party as a matter of discretion, determined by
the relative merits of the several parties upon a review of the
whole case, we do not think we are precluded from hearing an
appeal from the decision of a judge who only heard the question
of costs, in which it is alleged that he had awarded costs against
parties who are not, in law, liable to pay them.

We proceed, then, to inquire whether the fact that these appel-
lants were sued in their official capacity as aldermen, protects them
from personal liability for costs. The authorities cited by the
Circuit Judge (2 *Story Eq. Jur.*, § 955a, and 3 *Dan. Ch. Pl. &
Pr.*, 1548, 1557) show that where public functionaries, who are
exercising special public trusts or functions, or trustees of private
individuals, by their malfeasance or other misconduct render a
suit against them necessary, they may be required personally to
pay costs. The authorities cited by the counsel for appellants on
this point, only go to show that a public officer acting judicially
cannot be made liable for any mere mistake or error of judgment,
but that malice or corruption must be shown. In this case, the

mayor and aldermen were, by an act of the legislature, positively prohibited from increasing the debt of the city beyond the amount therein fixed, and as the Circuit Judge found that these appellants, together with their associates, had increased, and were continuing to increase, the debt of the city beyond said limit, they were guilty of personal misconduct in a matter not of a judicial nature, but in open violation of the plain terms of the statute, and, therefore, might properly be held liable, personally, for costs.

The only remaining inquiry is as to whether these appellants, whose rights alone are under consideration, should have been made liable for the costs of the whole case, in the new aspect which it had assumed; or, if not, what portion of the costs should they have been required to pay. It will be observed that the proper object of the action, as originally commenced, was simply to obtain an injunction restraining the mayor and aldermen from increasing the debt beyond the prescribed limit, for that was all that the act provided for; for although the complaint did also demand that all debts in excess of the limit fixed by the act should be declared invalid, yet that was beyond what the act provided for, and certainly could not have been determined in the absence of the parties claiming such debts to be due. If, therefore, the then mayor and aldermen, who were the only original defendants, had raised no issue as to the allegation that they had increased, and were continuing to increase, the debt of the city, the action then, having served its purpose, must necessarily have terminated with a simple order for injunction. But they did raise such issue, and, of course, it was necessary to try and determine the same. The injunction granted on September 7, 1875, so soon after the commencement of the action, must have been a temporary injunction, until the issue raised by the answer of the defendants could be heard and determined. It seems to us, therefore, that the action could not be regarded as terminated by that order of injunction, but that it must have gone on until the issue raised had been determined. And as that issue has been determined against these appellants, we see no error in charging them with all the costs and disbursements of the plaintiff in the trial and determination of that issue.

It seems, however, that after the action had been commenced

for the single purpose above indicated, it was, by amendment and by the introduction of new parties, converted into a wholly different action, in which new issues were raised, with which, so far as we can see, these appellants and their associates had no concern ; for having gone out of office on the first Tuesday in April, 1876, and their successors brought in by amendment, it was no longer their right or duty to contest such new issues, and they could not, therefore, be properly charged with any of the costs and disbursements incurred by the plaintiff in litigating such new issues.

It seems to us, therefore, that the Circuit Judge erred in charging these appellants and their associates in the board of aldermen with all the costs and disbursements incurred by the plaintiff in litigating and determining the various issues which arose in the action by reason of the change in the object, or, rather, in the addition to the objects originally sought to be obtained; and that they are only chargeable with such costs and disbursements as the plaintiff may have sustained in determining the issue originally raised, viz., whether these appellants with their associates in the board of aldermen had increased, or were continuing to increase, the city debt beyond the prescribed limit, at the time of the commencement of this action; whether such costs and disbursements were incurred before or after the granting the order of injunction of September 7, 1875, taking care that, in charging them with costs or disbursements incurred after that date, that they shall be only such costs and disbursements as would be incurred in hearing and determining such issue, and not costs or disbursements incurred in hearing or determining any of the new issues raised by the complaint as amended.

The judgment of this court is that the judgment of the Circuit Court be modified according to the views herein announced, and that the case be remanded to the Circuit Court for the purpose of carrying out such views.